IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| DANA ALLEN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | CASE No. 3:12-cv-0443 |
| | ) | SENIOR JUDGE NIXON |
| vs. | ) | MAGISTRATE JUDGE BROWN |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF | ) | |
| SOCIAL SECURITY | ) | |
| | | |
| Defendant. | | |

**To: The Honorable John T. Nixon, Senior United States District Judge**

### Report and Recommendation

This action was brought under 42 U.S.C. §§ 405(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") upon an unfavorable decision, by the SSA Commissioner ("the Commissioner"), regarding plaintiff's application for Disability Insurance Benefits ("DIB") under Title XVI of the Supplemental Social Income Act ("SSI"). 42 U.S.C. §§ 416(i), 1382(c). For the reasons explained below, the undersigned **RECOMMENDS** that the Plaintiff's motion for judgment on the record be **GRANTED IN PART**, the Defendant's motion for judgment on the record be **DENIED**, and the claim be **REMANDED** to the SSA for rehearing.

### I. PROCEDURAL HISTORY

Dana Allen Johnson ("Plaintiff") filed for DIB under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i) and 1382(c), on January 30, 2008. (Administrative Record ("AR") pp. 135-51) Plaintiff's claims were founded upon diagnoses of human immunodeficiency virus and bipolar disorder. (AR p. 146) Plaintiff's request was denied on June 30, 2008 and his request for reconsideration was denied on October 31, 2008. (AR pp. 55-9, 65-6)

Subsequent to Plaintiff's request, a hearing was conducted before an Administrative Law Judge ("ALJ"), Roy J. Richardson, on June 5, 2010. (AR p. 37) Present for the hearing were Plaintiff, his attorney William F. Taylor, and vocational expert ("VE") Susan Brooks. (AR p. 40)

The ALJ denied Plaintiff's application for DIB on October 6, 2010 and Plaintiff requested review of the ALJ's determination on November 6, 2010. (AR pp. 7-14, 37-54) The SSA Appeals Council denied review of the ALJ's determination on March 7, 2012. (AR pp. 1-3) Thus, the ALJ's determination constituted the Commissioner's final determination at that time.

The plaintiff brought this action in district court on May 2, 2012 seeking judicial review of the Commissioner's decision. (Docket Entry ("DE") 1) The defendant filed an answer and a copy of the administrative record on August 9, 2012. (DE 9, 10) Thereafter, the plaintiff moved for judgment on the administrative record on October 22, 2012 (DE 12), to which the defendant filed a response on March 8, 2013, also moving for judgment on the administrative record (DE 19). Plaintiff filed a reply on March 28, 2013. (DE 19)

This matter is properly before the court.

## II. THE RECORD BELOW

**A. Medical Evidence**

Plaintiff was evaluated by Dr. Roy Asta, Ph.D. ("Dr. Asta"), on January 29, 2008. (AR pp. 347-48, 381-87) Dr. Asta noted that Plaintiff was cooperative and friendly, made fair eye contact, had ok mood but was anxious, and his affect improved once he became comfortable. (AR p. 383) Plaintiff had no psychomotor problems, was alert and oriented times three, had good memory, fair insight, adequate judgment, no suicidal or homicidal ideations, and had no auditory or visual hallucinations. (AR p. 383) Dr. Asta also noted that Plaintiff "tends to act and behave

in a simplistic manner." (AR p. 383) Dr. Asta rated Plaintiff's Global Assessment Functioning ("GAF") at 50.[1] (AR p. 383)

Plaintiff was treated by Dr. Asta on four more occasions from January of 2008 through May of 2010. (AR pp. 347-48, 381-87) Dr. Asta consistently reported that Plaintiff's thought processes ranged from logical to illogical and were simplistic in nature. (AR pp. 347-48, 381-87) His mood was okay, but his affect was labile.[2] (AR pp. 347-48, 381-87) Plaintiff's insight was fair to poor, but his judgment was impaired. (AR pp. 347-48, 381-87) Plaintiff tended to exhibit isolative behavior, but when he did interact with others his behavior was inappropriate. (AR pp. 347-48, 381-87) Plaintiff suffered from severe social impairments due to his inability to relate well to others and suffered from mild paranoia. (AR pp. 347-48, 381-87)

On May 25, 2010, Dr. Asta's summary progress notes report:

> [Plaintiff's] condition at this point remains stable and poor. We have tried a variety of medications on him and they appeared to [be] semi-effective. The best medication at this time appears to be Invega. We have been using 6 mg one tablet p.o. q.a.m. This has helped with his impulsivity, psychotic thoughts, and episodes of irritability. However, his condition remains the same in which he still tends to tends to have these breakthrough symptoms. His father tends to help him greatly. He currently lives with him and be takes care [of] most of his activities of daily living. At this time, Dana likes to attempt to interact with public and also wants to attain employment. However, he has limited insight in which he does not appear to understand how his interaction can be unhealthy. He tends to work better when he is alone. At one point in time, he was working with animals at nighttime and did fairly well until his boss advised him to do a few things, which caused him to become extremely upset.
>
> His presentation is child-like. He tends to talk about hot ride cars and "too fast too furious". He tells me that he drives a small Honda Civic and this car is "one fast

---

[1] Global Assessment of Function is "a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 502 n.7 (6th Cir. 2006). A GAF score in the range of 40-50 represents serious symptoms resulting in marked difficulty, and a score in the range of 50-60 represents moderate symptoms. *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders p. 32 (4th Ed. 1994)

[2] Lability is defined as "emotional instability; rapidly changing emotions." *See* Dorland's Illustrated Medical Dictionary 994 (32nd Ed. 2012)

3

> hot ride." He also likes to listen to loud rock music and spent a lot of time engaging in culture which he would see in a 15-year-old individual.
>
> Supportive psychotherapy has been semi-effective with him. He appears to do very well with his interaction with his father. He tells me that my father "keeps me in check." He requires strict boundaries and patience in order to help with his behavioral symptoms. Again, the medications were only semi-effective in controlling this which it helps with some of the mood [l]ability. He has shown no outward behavior in which he has struck or hit any individual recently. However, when he becomes angry he can be "scary." I have been getting samples of Invega from the pharmaceutical company in which he has problems with [acc]ess to healthcare, financial difficulties, and no insurance. One option is to attempt to add another psychotherapist to help him. However, he does not do well with change and this could be very difficult at first. Depending on his social situation and instability, this might be a possible option in the future which may help out with his condition. I will continue to look at various mood stabilization medications that might help. A new mood stabilizer came on to the market, Saphris. However, due to access to healthcare, I will have to talk to the company to see if we can get the supply of his medication on their poor/indigent program.

(AR p. 381)

Medical records from Comprehensive Care Center ("CCC") detail Plaintiff's extensive history of substance abuse. (AR pp. 207-72, 280-9, 350-80) Plaintiff underwent rehabilitation for crack cocaine in 2002. (AR p. 233) A majority of the treatment notes from CCC demonstrate frequent, if not daily, use of marijuana and cocaine. (AR pp. 209, 213, 215, 221, 223, 233, 281, 358, 356-57, 354, 359) Plaintiff was treated in September of 2008 for burns to his mouth caused by smoking methamphetamine, but Plaintiff refused referral to rehabilitation at that time. (AR p. 358-9) Plaintiff continued smoking marijuana through May 5th of 2009, sometimes on a daily basis, but reported being "clean from 'meth' and cocaine since" the September incident. (AR p. 350, 352, 354, 356) Subsequent records from CCC do not disclose any other illicit drug use. (AR pp. 350, 352)

On June 17, 2010, Dr. Asta clarified his knowledge in regard to Plaintiff's substance abuse in a letter to the ALJ which stated:

4

> I have been the treating psychiatrist for [Plaintiff] from January 29, 2008 until present. He has past medical history of Asperger's disease, attention deficit hyperactivity disorder, and also diagnosed with HIV with possible cognitive dysfunction.
>
> During my treatment of [Plaintiff], I have concluded that he is suffering from not only ADHD and Asperger's disease but he also has bipolar disease with mixed features and psychosis. I believe that this is secondary to multiple features; stressors in his life, and his HIV status. These problems have caused his mental illness to present as severe mood swings, paranoid thoughts, trouble relating to people, intense anger, and social isolation.
>
> Based on my treatment of [Plaintiff] and the knowledge I have gained during my professional relationship with him, I have concluded that he has marked limitations in his ability to interact appropriately with people, be supervised in a work environment, interact with coworkers, respond appropriately to minor stresses, and changes in his work routine.
>
> [Plaintiff] does use marijuana sporadically; however, I have not seen any use since I have been treating him. He has consumed alcohol in the past. He also had a history of using illicit substances in the past. I believe that the drug use has declined dramatically since he has been in a more structured environment. In my assessment of [Plaintiff], drugs and alcohol play no part in his disability. His limitations and disability are [a] direct result of his ADHD, Asperger's disease, bipolar disorder with mixed features and psychosis, and cognitive deficit secondary to his HIV status.

(AR p. 395)

**B. DDS Expert Opinions**

SSA's medical expert, Dr. William Meneese Ph.D. ("Dr. Meneese"), performed a residual functional assessment of Plaintiff in June of 2008. (AR pp. 320-31) Dr. Meneese found that Plaintiff cared for his daily needs, had some difficulty concentrating, but also found that he had no problems following instructions or getting along. (AR p. 330) Dr. Meneese concluded that Plaintiff experienced mild to moderate limitations in all three functional group categories—restrictions of daily living; maintaining social function; maintaining concentration, persistence, and pace—and assessed Plaintiff's GAF at 60. (AR pp. 328-30)

**C. Testimonial Evidence**

1. *Plaintiff's Testimony*

5

Plaintiff testified that he could not get along with others in the work setting. (AR pp. 20-25) He became irate when confronted with authority or was told what tasks to perform and how to perform them. (AR pp. 20-25) Rather than engage in physical confrontation, Plaintiff testified that he would walk away from the job and not come back. (AR pp. 20-25) Plaintiff did note, however, that he was prone to "go[ing] off the handle" when he felt confronted. (AR pp. 20-25) Plaintiff stated that he lived in a cabin in the woods away from other people. (AR pp. 20-25) Although he could drive, he tended to remain alone at home and did not socialize with friends or family. (AR pp. 20-25)

When asked by his attorney about cocaine use, Plaintiff testified that he had not used cocaine in 10 to 12 years. (AR p. 26) However, treatment notes showing occasional cocaine use and frequent marijuana use, Plaintiff testified that he had not smoked crack cocaine in 10 to 12 years, had not "snorted" cocaine in the last two years, and that he smoked marijuana "occasionally." (AR p. 28)

2. *Vocational Expert's Testimony*

The ALJ posed the following hypothetical to the VE:

> [a]ssume an individual of the claimant's age, education and work history. Assume this individual would be capable of lifting and carrying 50 pounds occasionally, 25 pounds frequently. Assume that he could stand and/or walk six hours out of an eight-hour day, and sit for six hours out of an eight-hour day. Pushing and pulling are limited to the weights given. Due to mental limitations, this individual would be limited to understanding, remembering and carrying out routine step instructions. He would be able to respond appropriately to supervisors and coworkers and jobs that do not require independent decision making.
>
> Further, assume an individual who has the mental capacity to perform where interpersonal contact is incidental to the work performed. And changes in the work setting would occur no more than on an occasional basis. With these limitations, would the claimant's past work be performed?

(AR p. 29-30)

In response, the VE testified that Plaintiff's past work could be performed under the proposed hypothetical, as well as other jobs. (AR p. 30-31) The VE also testified that a person who suffered from the severe symptoms reported by Plaintiff—"an individual who missed more than 2 days of work per week, who could not interface appropriately with supervisors, coworkers, or the public"—could not compete for work in either the national or Tennessee economy. (AR p. 31-32)

### III. ANALYSIS

**A. Standard of Review**

The District Court's review of the Commissioner's denial of DIB is limited to a determination of whether those findings are supported by substantial evidence and whether correct legal standards were applied. 42 U.S.C. § 405(g); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). A finding of substantial evidence does not require all the evidence in the record to preponderate in favor of the ALJ's determination, but does require more than a mere scintilla of support for a denial of DIB. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

The ALJ's determination is entitled to deference where "a reasonable mind might accept [evidence in the record] as adequate to support" the ALJ's determination even though it could also support a different conclusion. *Rogers*, 486 F.3d at 241; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "[F]ailure to follow the rules" promulgated to control the process of benefit determination "denotes a lack of substantial evidence, even where the ALJ's" determination is otherwise supportable. *Cole*, 661 F.3d at 937 (*quoting Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)).

**A. Determination of a "disability" under the SSA**

To substantiate entitlement to DIB, a claimant must demonstrate "a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(a)(1)(E), (d)(1)(A). SSA's procedures require a five-step sequential assessment of whether: 1) a claimant has engaged in substantial gainful activity during the period under consideration; 2) the claimant has a severe medically determinable physical or mental impairment that significantly limits his ability to do basic work activities; 3) the claimant suffers from a severe impairment that meets or equals one of the listings in Appendix I Subpart P of the regulations and meets the durational requirements; 4) the claimant's impairment prevents him from doing past relevant work; and, if so, 5) is it possible for the claimant to transition to other work. 20 C.F.R. §§ 416.920a(b)-(e).

If the ALJ determines that the medical evidence demonstrates a "medically determinable mental impairment" at step two of the process, he must then, at step three, determine how the mental impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 416.920a(c)(2). In step two the ALJ must consider the claimant's: 1) ability to engage in the activities of daily living; 2) ability to function in social settings; 3) ability to concentrate, work persistently, or at a consistent pace; and 4) periods of decompensation.[3] 20 C.F.R. §§ 426.920a (c)(3).

A claimant's functional limitations are conclusive of disability if the ALJ finds marked to extreme limitations in two of the first three categories (20 C.F.R., pt. 404, subpt. P, app. 1, § 12.08(B)), or marked to extreme limitations in one of the first three categories accompanied by

---

[3] Decompensation connotes an exacerbation[] or temporary increase[] in symptoms or signs accompanied by a loss of adaptive functioning." 20 C.F.R., pt. 404, subpt. P, app. 1, § 12.00(C)(4).

8

three periods, lasting two weeks or more, of reduced functionality in a one year period of time. 20 C.F.R., pt. 404, subpt. P, app. 1, § 12.00(C)(4). Where claims to DIB are accompanied by evidence of substance abuse, the ALJ must determine whether substance abuse is material to the disability. 20 C.F.R. § 416.935(a). Substance abuse is material to a disability if the nature and extent of the disabling symptoms would not persist absent substance abuse. 20 C.F.R. § 416.935(b). Where substance abuse is material to disability, a claimant is not entitled to DIB. 42 U.S.C. § 1382c(a)(3)(J).

**B. Ruling of the ALJ**

On October 6, 2010, the ALJ released an unfavorable decision denying Plaintiff's claims to DIB. (AR pp. 37-53) At step 2 of the determination process, the ALJ found that Plaintiff "severe symptoms" resulted in marked difficulties in social functioning and concentration, persistence, and pace. (AR p. 43) However, noting evidence of Plaintiff's substance abuse, the ALJ also found:

> If the claimant stopped the substance use, the remaining limitations would not meet or medically equal the criteria of listings 12.04 or 12.10. In terms of the "paragraph B" criteria, the claimant would have mild restriction in activities of daily living if the substance use ended. In social functioning, the claimant would have moderate difficulties if the substance use ended. With regard to concentration, persistence or pace, the claimant would have moderate difficulties, and as for episodes of decompensation, the claimant would experience no episodes of decompensation if the substance use ended. As support for these findings, the undersigned refers to evidence that the claimant was noted with serious mental symptomology and a GAF score assessment of 50 at times, but was also assessed with a GAF scores of 60 at other times, which is indicative of only mild to moderate difficulties in social and occupational functioning (*see also* Diagnostic and Siatisrical Manual of Mental Disorders, 4th edition). Treatment notes also indicate that the claimant burned his mouth while smoking meth, occasionally used cocaine, and used marijuana on a daily basis in September of 2008. However, more recent treatment notes, during a period of time that illicit drug use is presumed to have decreased, if not completely stopped, indicate the claimant was stable and his medication was more effective in May of 2010. Additionally, the undersigned notes that the claimant's testimony regarding his use of cocaine was inconsistent, as he initially testified that he had not smoked

9

crack in ten to twelve years and later testified that he had not used in the past two years. These facts lead the undersigned to find that the appropriate conclusion to be drawn from this evidence is that, in the absence of drug abuse, the claimant functions at a higher level and experiences less severe symptomology, as indicated in the residual functional capacity given below.

(AR p. 44) With regard to the opinion of Dr. Asta, the ALJ found:

> In making these findings and assessing the above-cited residual functional capacity, the undersigned notes that the claimant's treating psychiatrist Roy Asta, M.D., opined that the claimant had no useful ability to interact with coworkers and supervisors. Additionally, vocational expert testimony indicated that this would preclude all competitive work. Although the undersigned accepts this assessment, the issue that remains is whether DAA is material to these findings. Accordingly, the undersigned requested that the claimant and the claimant's attorney request further information from Dr. Asta regarding Dr. Asta's knowledge of the claimant's drug and alcohol use. Dr. Asta's response was proffered by letter dated June 17, 2010, in which he indicated that the claimant used marijuana only sporadically, had only "a history of using illicit substances in the past", and dramatically decreased his drug use since being in a more structured environment, which is presumed to be the period of time since January of 2008 when Dr. Asta began treating the claimant. Ultimately, Dr. Asta opined that drugs and alcohol '... play no part in his disability.'
>
> However, Dr. Asta's examination notes and letter make no mention of the claimant burning his mouth while smoking meth in September of 2008, and do not indicate any awareness of separate medical treatment notes indicating that the claimant occasionally used cocaine and used marijuana on a daily basis as recently as September of 2008. In addition, the claimant offered contradictory testimony regarding his use of cocaine by initially testifying that he had used not smoked crack in ten to twelve years and when confronted with evidence to the contrary, he changed his testimony to indicate that he had not used cocaine in the past two years. The lack of credibility on the claimant's part regarding the use of illicit drugs, combined with Dr. Asta's lack of knowledge regarding the extent of the claimant's drug use while under the doctor's treatment, lead the undersigned to conclude that the doctor's opinion that drug abuse is not material to the claimant's disability is not entitled to controlling weight.
>
> Furthermore, Dr. Asta's lack of knowledge regarding the extent of the claimant's drug use leads the undersigned to afford his opinion that the claimant had no useful ability to interact with coworkers and supervisors little weight in determining the claimant's residual functional capacity. Moreover, the undersigned notes that the claimant was noted with serious symptoms and a GAF score assessment of 50 at times, but was also assessed with a GAF score of 60 at other times, which indicates only mild to moderate difficulties in social and occupational functioning (*see also* Diagnostic and Siatisrical Manual of Mental Disorders, 4th edition). Accordingly, the undersigned finds that the appropriate conclusion to be drawn from this evidence is that, in the absence of drug abuse,

the claimant functions at a level consistent with the mental assessment offered by William Meneese, Ph.D., as indicated in the residual functional capacity statement.

(AR pp. 46-7)

## IV. CLAIMS OF ERROR

Plaintiff asserts that the ALJ's findings are in error. (Plaintiff's Br., DE 12-1, p. 13) Plaintiff argues that Dr. Asta's assessment is controlling under the treating physician rule. (Plaintiff's Reply, DE 19-1, pp. 2-3) According to Plaintiff, Dr. Asta was aware of Plaintiff's substance abuse over his "longstanding, extensive treating relationship" and is more qualified to assess the impact of substance abuse on Plaintiff's symptoms than the ALJ. (Plaintiff's Reply, DE 19-1, pp. 2-3) Plaintiff contends that the record does not support the ALJ's decision to discount Dr. Asta's opinion, and that the ALJ failed to cite "good reasons" for doing so. (Plaintiff's R., DE 19-1, p. 2-3)

The Commissioner has "elected to impose certain standards on the treatment of medical source evidence." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1512, 1513, 1520).[4] A treating source opinion is entitled to controlling weight unless the ALJ finds it "[un]supported by medically acceptable clinical and laboratory diagnostic techniques . . . and [] inconsistent with the other substantial evidence in the case record."[5] *Id.* (quoting 20 C.F.R. §§ 404.1502, 1527(c)). Where the ALJ finds a treating source not entitled to controlling weight, he is required to state "good reasons" for discounting the treating source opinion, the weight afforded to the treating source opinion, and the basis for that determination. *Gayheart*, 710 F.3d at 375-6 (citing 20 C.F.R. § 404.1527(c)(2)).

---

[4] While the Magistrate Judge cites case law referring to Title II of SSA, Title XVI's provisions are indistinguishable. *Compare* 20 C.F.R. §§ 404.1512, 1513, 1520, 1527 *with* §§ 416.912, 913, 920, 927.

[5] A treating source under the regulations is an "acceptable medical source who provides [the claimant] . . . with medical treatment." 20 C.F.R. § 404.1502.

The Commissioner argues that the ALJ found that Plaintiff's substance abuse was persistent over the "period of January 30, 2008 through the last documented treatment note by Dr. Asta [] on May 25, 2010." (Defendant's Br., DE 18, p. 10) As such, Dr. Asta's opinion is only "useful for assessing [Plaintiff's] condition while abusing drugs and alcohol." (Defendant's Br., DE 18, p. 9) However, the record does not support this contention. The ALJ's determination, cited *supra* at pp. 10-11, makes clear that the basis for discrediting Dr. Asta's opinion is that he was unaware that Plaintiff "burn[ed] his mouth while smoking meth in September of 2008, and [his treatment notes] do not indicate any awareness [that Plaintiff] occasionally used cocaine and used marijuana on a daily basis as recently as September of 2008."[6] (AR p. 43)

In his initial finding of disability during step two of the determination process, the ALJ cited to Plaintiff's "mood swings, illogical thoughts, trouble relating to others, irritability, loud speech, isolative behavior and some transient paranoia" as conclusive proof of Plaintiff's disability. (AR p. 43) During both the materiality assessment and the residual functional capacity assessment at step 3, the ALJ constrained his view of the record to a period of time when he presumed that Plaintiff's substance abuse had "decreased, if not completely stopped." (AR pp. 44-46) According to the ALJ, Dr. Asta's "recent treatment notes," those subsequent to September of 2008, indicate that Plaintiff "functions at a higher level and experiences less severe symptomology" in the absence of substance abuse. (AR p. 44)

---

[6] Alternatively, the Commissioner argues that Plaintiff's substance abuse continued beyond September of 2008 and that Plaintiff is not entitled to DIB as a result. (Defendant's Br., DE 18, p. 9) Although conceding that "[i]t is not known whether [Plaintiff] really had a break in substance abuse" between September of 2008 and May of 2010, the Commissioner attributes the severity and persistence of Plaintiff's symptoms to continued substance abuse. (Defendant's Br., DE 18, p. 12) While this assertion may be supported by the record, the ALJ neither found this to be the case, nor based the DIB determination on that fact. (AR pp. 41-48) As such, the Magistrate Judge has not considered this argument. The ALJ is free to explore the full extent of Plaintiff's substance abuse on remand.

However, these treatment notes also reflect that the same "severe symptoms and limitations" relied on by the ALJ in his initial disability finding persisted through November of 2008, August of 2009 and well into 2010. (Plaintiff's Br., DE 12-1, p 16); (AR pp. 384-86) As noted *supra* at pp. 3-4, Dr. Asta's treatment notes from May of 2010 report that medications were only semi-effective at controlling Plaintiff's symptoms. (AR p. 381) According to Dr. Asta, he had exhausted the medications available to treat Plaintiff's disruptive behavior and the "breakthrough symptoms" that make working with Plaintiff "unhealthy," and yet they persisted. (AR p. 381)

Dr. Asta's revised assessment from June 17, 2010, cited *supra* at pp. 4-5, detail "marked limitations in [Plaintiff's] ability to interact appropriately with people, be supervised in a work environment, interact with coworkers, and respond appropriately to minor stresses, and changes in his work environment." (AR p. 395) Based upon the severity of the symptoms observed by Dr. Asta, the VE testified that Plaintiff would not be able to compete for work in either the national or Tennessee economy. (AR pp. 31-32)

The Magistrate Judge agrees that affording Dr. Asta's opinion "little weight" during a period of substance abuse of which he was unaware of provides "good reason" to discount his opinion. However, under the ALJ's presumption that Plaintiff was essentially drug free after September of 2008, substance abuse is immaterial to the Plaintiff's symptomology for DIB purposes during that period. Moreover, the ALJ never addressed Dr. Asta's professed knowledge of Plaintiff's substance abuse, or the fact that it is consistent with the ALJ's presumption.[7]

---

[7] The Magistrate Judge notes that the ALJ cited to "inconsistent" GAF scores assessed by Dr. Asta and Dr. Meneese. Dr. Asta assessed Plaintiff's GAF at 50 in January of 2008 and Dr. Meneese assessed Plaintiff's GAF at 60 in June of that same year. (AR pp. 330, 383) As the ALJ's determination is predicated upon the

Affording Dr. Asta's opinion "little weight" under these circumstances amounts to the ALJ "substitute[ing] his own medical judgment for that of the treating physician['s]," contrary to the mandate of the treating physician rule. *Meece v. Barnhart*, 192 Fed. Appx. 456, 465 (6th Cir. 2006); 20 C.F.R. § 416.927(c)(2).

While the regulations promulgated to guide the ALJ's DIB determination do give him substantial discretion in making the ultimate disability determination, they also cabin that discretion in regard to persistence and severity of a claimant's symptoms. 20 C.F.R. §§ 416.903, 927(c)(2). The latter determination is reserved to the treating source unless the ALJ finds that opinion without basis in medically determinable facts or contrary to substantial evidence in the record. 20 C.F.R. § 416.927(c)(2). And then, only if the ALJ provides "good reason" for discounting the treating source opinion and those reasons are supported by substantial evidence. *Gayheart*, 710 F.3d at 375-6.

## V. CONCLUSION

For the foregoing reasons, the Magistrate Judge finds that the ALJ failed to provide "good reasons" for affording Dr. Asta's opinion less than controlling weight, and, thus, the ALJ's determination is not supported by substantial evidence.

## VI. RECOMMENDATION

For the reasons stated above, the undersigned recommends that the plaintiff's motion for judgment on the record (DE 12) be **GRANTED IN PART**, Defendant's motion for judgment on the record be **DENIED**, and the case be **REMANDED** to the SSA for rehearing.

The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall

---

period of time between September of 2008 and May of 2010," neither GAF is material to the disability determination.

respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

        **ENTERED** this 26th day of September, 2013.

        /s/Joe B. Brown
        Joe B. Brown
        Magistrate Judge