## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| DANA ALLEN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:12-cv-00443 |
| v. | ) | |
| | ) | Judge Nixon |
| CAROLYN W. COLVIN, | ) | Magistrate Judge Brown |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

At issue in this matter is whether a Social Security Administration Administrative Law

Judge ("ALJ") erred in declining to give controlling weight to the medical opinion of Dr. Roy

Asta that Plaintiff's past substance abuse was not material to his disability. Pending before the

Court is Plaintiff's Motion for Judgment on the Administrative Record ("Motion") (Doc. No.

12), filed with a Brief in Support (Doc. No. 12-1). Defendant Commissioner of Social Security

("Commissioner") filed a Response in Opposition to Plaintiff's Motion (Doc. No. 18), and

Plaintiff filed a Reply (Doc. No. 19-1). Magistrate Judge Brown issued a Report and

Recommendation ("Report"), finding that the ALJ erred and recommending that Plaintiff's

Motion be granted in part and the case remanded to the Social Security Administration for

further proceedings. (Doc. No. 20 at 14–15.) The Commissioner filed an Objection to the

Report (Doc. No. 21) and Plaintiff filed a Response (Doc. No. 25). For the reasons stated below,

the Court **ADOPTS** the Magistrate Judge's Report as modified below, **GRANTS** in part

Plaintiff's Motion, **VACATES** the administrative decision, and **REMANDS** this case to the

Commissioner for further proceedings. Plaintiff's Motions for Status (Doc. Nos. 26, 27) are

**TERMINATED AS MOOT**. The Clerk of the Court is **DIRECTED** to close the case.

## I.  BACKGROUND

The Court adopts the facts and procedural history as stated in the Review of the Record in Magistrate Judge Brown's Report. (Doc. No. 20 at 1–7.) The Court restates the facts and procedural history below only as necessary and relevant to the resolution of the issues.

## II.  STANDARD OF REVIEW

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b) (2012). However, Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2012). Therefore, the Court's review is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different

2

factual conclusions than the ALJ as to the plaintiff's claim on the merits, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III.  ANALYSIS

The parties contest whether the ALJ properly declined to assign controlling weight to Dr. Roy Asta's opinion that Johnson's history of substance abuse was not material to his disability. The Magistrate Judge determined that the ALJ erred in failing to give controlling weight to Dr. Asta's opinion. (Doc. No. 20 at 14–15.) The Commissioner contends that the ALJ's determination was correct because Dr. Asta's opinions were based on the assumption that Johnson was not abusing drugs during any part of his treatment; because the evidence allegedly reveals Dr. Asta did not know Johnson was continuing to abuse drugs in treatment, Dr. Asta's assumption was incorrect, and his opinion therefore cannot be entitled to controlling weight. (Doc. No. 24 at 5.)

If a Social Security claimant's substance use disorder is "a contributing factor material to the Commissioner's determination that the individual is disabled," the claimant is not disabled under the Social Security Act.  42 U.S.C. § 423(d)(2)(C) (2012).  Substance use is a contributing material factor to a disability determination if the claimant would not be disabled under the Act if he "stopped using drugs or alcohol."  20 C.F.R. § 416.935(b)(1) (2012).  In making this determination, the ALJ must "follow the same rules for evaluating evidence . . . that [he or she] use[s] to [evaluate] other types of claims," including the treating source rule. *Social Security Administration Program Operations Manual System* ("POMS") DI 90070.050, Adjudicating a Claim Involving Drug Addiction or Alcoholism (DAA); *see, e.g., Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 417 (6th Cir. 2012).

The ALJ is required to give treating source[1] opinions "controlling weight" if the following conditions are met: "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013), reh'g denied (May 2, 2013) (quoting 20 C.F.R. § 404.1527(c)(2)); *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 696 (6th Cir. 2007). If the ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so that are supported by the evidence in the record and sufficiently specific to permit "meaningful review of the ALJ's application of the rule." *Id.* (internal citations omitted). A failure to give "good reasons" "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record" and, unless the failure is harmless error, requires remand. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007)).

The ALJ based his decision that Johnson's history of substance abuse is material on three findings: (1) " the claimant was noted with serious mental symptomology and a GAF score assessment of 50 at times, but was also assessed with a GAF scores of 60 at other times"; (2) compared to treatment notes from September 2008, the ALJ found "more recent treatment notes, during a period of time that illicit drug use is presumed to have decreased, if not completely stopped, indicate the claimant was stable and his medication was more effective in May of 2010"; and (3) the ALJ's assessment that Johnson's "testimony regarding his use of cocaine was

---

[1] Under 20 C.F.R. §§ 404.1502 and 416.902, a "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." Here Johnson's medical records indicate he began seeing Dr. Asta on January 29, 2008, and has consulted with him several times since. (Tr. 381–95.) The parties do not dispute that Johnson and Dr. Asta have an ongoing treatment relationship and that he is properly considered a treating source under the regulations. (*See, e.g.*, Tr. 46; Doc. No. 18 at 7.)

inconsistent." (Tr. 44.) Furthermore, the ALJ determined that Dr. Asta's medical opinion that

Johnson's drug use was not material to his disabilities was not entitled to controlling weight

because of (1) the inconsistency in Johnson's testimony, and (2) "Dr. Asta's lack of knowledge

regarding the extent of the claimant's drug use while under the doctor's treatment." (Tr. 46–47.)

### A. The ALJ's Controlling Weight Analysis

As to Dr. Asta's knowledge of Johnson's substance abuse, this Court finds the ALJ's

conclusion is not supported by evidence in the record. In his June 17, 2010, letter to the ALJ, Dr.

Asta reported

> Mr. Johnson does use marijuana sporadically; however, I have not seen any use
> since I have been treating him. He has consumed alcohol in the past. He also had
> a history of using illicit substances in the past. I believe that the drug use has
> declined dramatically since he has been in a more structured environment. In my
> assessment of Mr. Dana Allen Johnson, drugs and alcohol play no part in his
> disability.

(Tr. 395.) The ALJ "presumed" that the time period in a "more structured environment" referred

to "the period of time since January of 2008 when Dr. Asta began treating the claimant." (Tr.

46.) Because Dr. Asta's treatment notes make no mention of Johnson's "medical treatment notes

indicating that the claimant occasionally used cocaine and used marijuana on a daily basis as

recently as September of 2008," after Johnson was "presumed" to be in the "more structured

environment," the ALJ concluded that "Dr. Asta[] lack[ed] knowledge regarding the extent of

the claimant's drug use while under the doctor's treatment." (Tr. 47.) However, in a Progress

Note from November 5, 2008, Dr. Asta described Johnson as follows: "He tends to be slightly

paranoid and has simplistic thoughts. He states 'I've been seeing a drug people around and I try

to avoid the stuff, but sometimes I get into trouble.'" (Tr. 385.) Therefore, the ALJ's conclusion

is incorrect because the treatment notes indicate that Johnson told Dr. Asta he was using drugs at

this point in his treatment. Furthermore, there is no evidence in the record indicating that

Johnson continued to use drugs after the November 5, 2008, treatment note, beyond Johnson's admission before the ALJ that he "occasionally smoke[s] marijuana." (Tr. 26–27.) Contrary to the ALJ's determination, Dr. Asta's notes and opinion demonstrate knowledge of Johnson's substance abuse that is consistent with the evidence in the record.

The ALJ's second rationale for failing to give Dr. Asta's opinion controlling weight was that Johnson "offered contradictory testimony regarding his use of cocaine by initially testifying that he had used not [sic] smoked crack in ten to twelve years and when confronted with evidence to the contrary, he changed his testimony to indicate that he had not used cocaine in the past two years." (Tr. 46.) The "evidence to the contrary" presented at the hearing is a September 2008 treatment record in which Johnson admitted to "occasional cocaine" use. (Tr. 28.) After the ALJ "confronted" Johnson with this record at trial, Johnson responded "I have snorted cocaine, but I haven't smoked any crack for like 12 years . . . . I haven't done any cocaine in the last few years." (Tr. 28.)

Although crack and cocaine powder are both varieties of cocaine, they are often referred to distinctly. For instance, according to the DSM-IV, cocaine "is consumed in several preparations . . . [c]ocaine hydrochloride powder is usually 'snorted' through the nostrils . . . A commonly used form of cocaine in the United States is 'crack,' . . . [which] differs from other forms of cocaine primarily because it is easily vaporized and inhaled." *Diagnostic and Statistical Manual of Mental Disorders* 221 (4th ed. 1994) ("DSM-IV"). The ALJ's rationale is not supported by evidence in the record, then, because Johnson did not change his testimony. He maintained his testimony that he had not smoked crack in ten to twelve years, but when asked about the 2008 record, clarified that he had used a different preparation of cocaine, cocaine

powder, until a few years prior. Johnson's statements before the ALJ were internally consistent, and consistent with all other evidence of record in this matter.

*B. The ALJ's Materiality Analysis*

The ALJ need not give controlling weight to a treating physician's opinion if it is inconsistent with other substantial evidence in the record. *Gayheart*, 710 F.3d at 376. If substantial evidence in the record supports a finding that Johnson's substance abuse was material to his disability, Dr. Asta's opinion to the contrary would not be entitled to controlling weight. Accordingly, the Court examines the ALJ's other stated reasons for his materiality finding.

Apart from the inconsistency in Johnson's testimony addressed above, the ALJ cited two other reasons for his determination that Johnson's substance abuse was a contributing material factor to his disability. The first was an alleged discrepancy in Johnson's Global Assessment of Functioning scale ("GAF") scores, which the ALJ described as "50 at times, but . . . 60 at other times." (Tr. 44.) The ALJ viewed this as evidence that Johnson had improved functioning when he was not abusing substances, and therefore that his substance abuse was material. (*Id.*)

Upon examination of the record, the Court identified only one GAF score: an assessment of "50–60" from a January 29, 2008, evaluation.[2] (Tr. 383.) The ALJ cited Exhibits 2F, 7F, and "6F3" in support of his finding of a change in score over time. Exhibits 2F and 7F contain the identical record from January 2008 reprinted at two different locations. (Tr. 275, 316.) There is no exhibit "6F3" in the record (*see* Doc. No. 10 at 2–4); however, the Court assumes the ALJ meant to refer to the third page of exhibit 16F, which is also an identical copy of the January 2008 record. (Tr. 383.) Dr. William Meneese, an SSA consultant, reviewed Johnson's medical

---

[2] The Court notes that the DSM-IV lists GAF scores in ranges: a score in the 51–60 range indicates "moderate symptoms," whereas a score in the 41–50 range indicates "severe symptoms." DSM-IV at 32. Johnson's lone score, a 50–60, indicates that Johnson was evaluated at the top end of "severe" or somewhere in the "moderate" range.

records and noted his GAF score as a "60," but Dr. Meneese's record clearly indicates that this score, too, was transcribed from Johnson's January 2008 evaluation. (Tr. 330.) Accordingly, there is no GAF score discrepancy in the record. Furthermore, the score was obtained in January 2008, a time when Johnson admittedly had a substance use disorder. Therefore the ALJ erred in using the score as evidence of Johnson's functioning without a substance abuse disorder.

The ALJ also used the alleged GAF score discrepancy to support a finding that, "[i]n terms of the 'paragraph B' criteria, the claimant would have mild restriction in activities of daily living . . . [and] [i]n social functioning the claimant would have moderate difficulties if the substance abuse ended" because a score of 60 "is indicative of only mild to moderate difficulties in social and occupational functioning." (Tr. 44 (citing DSM-IV).) Even if there were a score discrepancy in the record, this use of Johnson's GAF score would be error because, as the Social Security Administration has found, the GAF scale "does not have a direct correlation to the [paragraph B criteria] in our mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746, 50,765–65 (Aug. 21, 2000);[3] *accord Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) (noting "according to the DSM's explanation of the GAF scale, a score may have little or no bearing on the subject's social and occupational functioning").

---

[3] Although not in effect at the time of the ALJ's determination, the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders eliminates the GAF scoring system completely. In an administrative message, the SSA explained that "[s]ome clinicians give inflated or unrealistically low GAF ratings because the GAF rating instructions in the DSM-IV-TR are unclear . . . [this] can lead to improper assessment of impairment severity." Soc. Sec. Admin., Global Assessment of Functioning (GAF) Evidence in Disability Adjudication, AM-13066 REV (Oct. 14, 2014). The SSA explicitly advises ALJs

> A GAF rating alone is never dispositive of impairment severity. **DO NOT**: . . . . Equate any particular GAF rating with a listing-level limitation . . . . [or] Equate a particular GAF rating with a particular mental residual functional capacity assessment . . . [T]here is no correlation between GAF ratings and the B criteria in the mental disorders listings.

*Id.* (emphasis in the original).

Finally, the ALJ determined that Johnson's substance abuse was material because, compared to his November 2008 treatment notes, in May 2010, Johnson's "psychotherapy and medications were more effective," "he reported interacting well with his father," he "wanted to keep attempting to interact with others and obtain employment," and his progress notes indicate he was "stable . . . which suggest that, without drug or alcohol use/abuse, the claimant experienced only mild to moderate symptomology." (Tr. 46.) Magistrate Judge Brown considered these findings in his Report and Recommendation and found otherwise. Dr. Asta's

> treatment notes . . . reflect that the same "severe symptoms and limitations" initially relied on by the ALJ in his initial disability finding persisted through November of 2008, August of 2009 and well into 2010 . . . Dr. Asta's treatment notes from May of 2010 report that medications were only semi-effective at controlling Plaintiff's symptoms. According to Dr. Asta, he had exhausted the medications available to treat Plaintiff's disruptive behavior and the "breakthrough symptoms" that make working with Plaintiff "unhealthy," and yet they persisted.

(Doc. No. 20 at 13.) Upon review of the medical records, the Court concurs with the Magistrate Judge's determination. Contrary to the ALJ's findings, the medical records do not indicate that Johnson's "psychotherapy and medications were more effective" in 2010 than in 2008.

### C. Harmless Error

The ALJ's failure to accord Dr. Asta's opinion controlling weight is not grounds for remand if it was a harmless error.

> [A] violation of the good reasons rule can be deemed to be harmless error if (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation."

*Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) (quoting *Friend*, 375 Fed. App'x at 551) (internal quotation marks omitted). The ALJ meets the goals of the regulation if his determination provides sufficient explanation for the claimant to understand the basis of the

determination and to permit "meaningful appellate review of the ALJ's application of the rule." *Johnson-Hunt*, 500 F. App'x at 420. In this case none of these exceptions apply. Dr. Asta's opinion was not "patently deficient," the ALJ's determinations were inconsistent with Dr. Asta's opinion, and upon review of the ALJ's reasons, this Court cannot determine why Dr. Asta's opinion should not be entitled to controlling weight. Accordingly, the ALJ's failure to give Dr. Asta's opinion controlling weight was not harmless error.

## IV.    CONCLUSION

The Court finds that the ALJ's failure to give controlling weight to Dr. Asta's opinion was not supported by substantial evidence in the record and was not harmless error. Accordingly, Johnson's Motion (Doc. No. 12) is **GRANTED** in part, the Magistrate Judge's Report (Doc. No. 20) is **ADOPTED** in part, the ALJ's determination is **VACATED**, and this case is **REMANDED** to the Social Security Administration for a reassessment of the materiality of Johnson's history of substance abuse and further adjudication of his claim for disability benefits.

It is so ORDERED.

Entered this __2 0__ day of April, 2015.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT